Our final case for today is case number 4-14-06-28, People of the State of Illinois v. Jarrett Staake. For the appellant we have Mr. Allen Andrews, is that correct? And for the appellee we have Ms. Alison Paige Brooks. Are you ready to proceed, counsel? Please accord, Ms. Brooks. I represent Jarrett Staake in this case. This case involved murder charges with Mr. Staake responding by arguing he acted in self-defense. The jury convicted Mr. Staake of second-degree murder, unreasonable belief of self-defense. Erroneous evidentiary rulings caused the jury to reject Mr. Staake's self-defense claim. A brief recitation of the facts helped set those evidentiary rulings into context. Michael Box, the decedent, was highly intoxicated at the time he was stabbed by Mr. Staake. He had a blood alcohol level of about .18 and the doctor who treated him thought he was under the influence of drugs. Mr. Box apparently thought that Mr. Staake was going to sleep with one of Box's friend's girlfriends. So to prevent that, Mr. Box created a disturbance outside the girlfriend's trailer. That disturbance caused Mr. Staake to step outside. Once Mr. Staake stepped outside, Mr. Staake pulled out a pocket knife, flicked it open and stabbed Mr. Box in the abdomen. The dispute in this case is over what happened in the few moments between Mr. Box sucker punching Mr. Staake in the face and Mr. Staake stabbing Mr. Box. The state's version of those few moments is based on the testimony of one of Mr. Box's co-workers, Brandon Hodge, and of the friend's girlfriend. Both of them testified that Mr. Box stepped backwards after striking Mr. Staake in the face so that Mr. Staake had to advance to stab him. Of course, the co-worker was a convicted felon and the girlfriend had failed to tell the police that Mr. Box had stepped back a moment after he struck Mr. Staake. Mr. Staake, in contrast, testified that Mr. Box was still advancing upon him and preparing to hit Mr. Staake in the head again. The state argued in this case that the testimony of the two witnesses, the girlfriend and the co-worker, showed that Mr. Staake did not act in self-defense because since Mr. Box had stepped backward, the assault was over. And they highlighted the fact that it was two to one. No advancing upon him. The first error I'd like to discuss... Before we even get into that, let me ask you about your second point regarding this claim that the state court aired regarding the state's motion to eliminate... On the causation issue? On the medical treatment? Yes, Your Honor. What was the evidence that the court kept up? Well, the evidence came in, but she precluded argument. I mean, I'm not positive. It may have been defense counsel thought he had some other evidence, but the evidence to support the causation claim was in. But the main thing she did was directed a verdict for the state on that by saying, defense counsel, you flat out can't argue that Mr. Staake did not cause the death. And the evidence supporting that, of course, was Mr. Box's highly agitated, intoxicated state, his refusal to accept ordinary medical treatment, checking himself out of the hospital against the doctor. I just wanted to be clear that there is not some evidence you claim that the defense offered that was... The defendant was prohibited from introducing. It's more that the judge directed the verdict and the evidence to make the argument. It's sufficient in the record. So this is an argument that the court improperly limited closing argument? Closing argument, again, it's hard. She also said, she also told the court, told the counsel, you just can't get into that issue. And it's not clear what counsel would have done, what other evidence he would have elicited. My major point... Doesn't it need, if there's other evidence which you're raising as an issue, doesn't it need to make an offer of proof? Typically, that would be a good idea. My major point is that the court refused to allow defense counsel, based on the argument, on the evidence that was presented, to make any sort of argument that that showed that Mr. Stockey was not responsible for Mr. Box's death. It doesn't do you any good to have causation evidence in the case if you can't point out to the jury that it shows that Mr. Stockey's not guilty. And the state was permitted to argue that Mr. Stockey caused his death. It was a completely one-sided ruling. Okay, go ahead. I'm sorry. Okay. As far as back to the evidentiary rulings that injured Mr. Stockey's self-defense claim, the court excluded evidence from the treating physician that would have shown that Mr. Box was violent. The court twice sustained state objections that the doctor's testimony was not responsive to defense counsel's questions. And that's not a proper grounds to sustain an objection. Did the testimony come out? Well, the court sustained an objection. To the question? Yes. And the jury was instructed to disregard testimony that, you know, objections were sustained to. The first- Perhaps I'm not being as clear as I should. Did the doctor ever testify to the matters that you're saying he should have been permitted to testify to whether it was objected to and sustained or not? The objection- Was it ever testified to? So, in other words, was there an objection made and sustained before the doctor ever answered the question? No, he answered the question. That's the only way you could make a non-responsive objection is if he did answer the question. And then the court sustained the objection and they were instructed to disregard testimony where an objection had been sustained. And the first statement where the objection was sustained to was the doctor's testimony that he was being knocked off by Mr. Box. And that's very prejudicial, you know, that's very favorable for the defense. That showed that Mr. Box was engaged in exactly the same type of behavior after he's been stabbed while he's in the hospital with somebody who's trying to help him. You know, he punched Mr. Stocke in the face and now he's trying to knock the doctor's head off. It's very, very relevant to Mr. Stocke's argument and testimony that Mr. Box was still the aggressor. A jury could reasonably conclude that, you know, if Mr. Box is willing to try and punch a doctor who's helping him in the hospital, that he's not the type of gentleman who was going to be satisfied with punching Mr. Stocke one time and then backing off and saying, oh, it's all over. It's very corroborative of his violent nature that Dr. Day confronted in the hospital. It's very probative of Mr. Stocke's testimony that Mr. Box was still coming at him when he stabbed him. And the other testimony that was stricken, Dr. Day said that he scared him. And that's important because, you know, if Dr. Day feared Mr. Box in the hospital, it's quite reasonable, the jury could have concluded that it was very reasonable that Mr. Stocke still feared and reasonably feared Mr. Box after he'd been punched. And that justifies his use of potentially lethal force. Now, in the same vein, as far as showing how violent, what a violent individual Mr. Box was, the court also refused to let the man in the tavern in January, about six months before this, Mr. Stocke was permitted to testify. I saw Mr. Box call a man over, sucker punched him, knocked him cold, the man hit the concrete floor, Mr. Box turned around and smirked at me. But there were two other witnesses who saw that, and the defense wanted to present their testimony. Now, the court got sidetracked here. There are two purposes for lynch evidence, which is what the violent behavior is. You know, the first is to show that Mr. Box was the aggressor by showing he has a history of violent behavior. And the second would be to show what Mr. Stocke particularly knew in regard to how reasonable Mr. Stocke's belief was that the battery was going to continue. Now, the court was misled because the state said, we're not going to argue that Mr. Box was not the aggressor, we're going to concede that. So therefore, the court ruled, well, the first prong of lynch is out. You can't present any evidence just to show that Mr. Box is violent, because the state's not going to argue he's the aggressor. The court said, therefore, you can only present evidence of his violence in the personal knowledge of Mr. Stocke. And the court decided that the other two witnesses who saw this couldn't provide any testimony that had any bearing on Mr. Stocke's personal knowledge. Was there a request for an offer of proof on that testimony? From the other two witnesses? Yes. No, that testimony never came out. I'm asking, I don't know if you were defense counsel below, but I'm asking if counsel asked for the opportunity to make an offer of proof. There was a hearing and he never called those two witnesses. I don't think there's any dispute about whether or not they saw them. That's not been argued. The state only argued it's not relevant. Did the state ever present any evidence or argument contrary to Mr. Stocke's testimony about this prior incident? No, no, they did not. Was there any dispute then as to whether or not it had occurred? And the question is, why isn't this just then a limitation by the trial court on the number of witnesses the defendant may present to corroborate an issue which wasn't disputed? I was just about to get to that point. I think, you know, certainly it would be reasonable for the court to preclude any number of witnesses to call to corroborate Mr. Stocke's testimony, but it's not reasonable to preclude any witness from corroborating his testimony. Maybe if it was only one witness, that'd be fine too. He wasn't asking to call a lot of witnesses and it's important to corroborate a person's testimony. I don't know any state's attorney who wouldn't try to corroborate their, the victim's testimony, and this is a far cry from, you know, someplace where there's just all this cumulative testimony. Well, that's why I asked, was it there's some argument made by the state that you heard the defendant talk about this prior incident but don't believe him? I think the defendant's word is always in doubt in a case like this. Counsel, I try to ask my questions with specificity. Was there any argument that he was lying about that? Yes, was there any argument made by the state? No, I don't believe so. Okay, go ahead. And I don't think that that matters because you should be entitled, as I said, any defendant's credibility is in question and I don't believe there's really any reason why one person's testimony would be such a sideshow that it should be eliminated. But moving on to the second point, you know, the state reneged on its promise to not argue that Mr. Box was the aggressor. You know, they did say Mr. Box was not the aggressor. They cited the co-worker's testimony and they cited the girlfriend's testimony and they said Mr. Stockie was not acting in self-defense because Mr. Box had stepped backward and the attack had terminated. So the incorrect ruling was caused directly by the state's incorrect promise that they would not contest that point. And at that point, I mean, that came out in the closing argument. I don't know what the judge could have done about it at that point, but that's highly prejudicial because evidence that, you know, Mr. Box is the aggressor because he's a violent person. And that's more likely to show that he did not step back like the state witnesses claim. It's also very relevant. It shows that one punch can knock a man out. Mr. Box is a big, strong man who can knock a man out. So it's relevant to the argument of whether or not Mr. Stockie can reasonably expect that he's going to receive great bodily harm at the hands of Mr. Box. You know, this is a self-defense case. Mr. Stockie, apparently, the way things turned out, he would have been better off standing there and letting Mr. Box beat him to a pulp because... Or not pull out a knife. That might have helped. You know, he's entitled to use lethal force. It's a Second Amendment thing. He can, you know, use lethal force to defend himself from the imminent infliction of death or great bodily harm or to stop a violent... So this is a stand your ground argument now we're hearing? I'm saying that it's not disproportionate for him to pull out a knife when a man sucker punches him in the face. A man he knows is capable of knocking another man out. It's not a disproportionate response. That brings me to the next issue that I wanted to talk about, and that was Issue 5, and that was the state's closing argument. You know, I don't know Mr. Wyckoff, but it seemed to me that throughout the proceedings, at least with the prosecutors, he was a very unpopular individual. They did not seem to like Mr. Stockey's counsel. Who's they? The two prosecutors, Mr. Parkinson and the state's attorney. And anyway, maybe that's my obnoxious subjective, you know, being a defense counsel. It doesn't matter. Once we got to the rebuttal argument, Mr. Parkinson really lit into Mr. Wyckoff. You know, he accused him of being an elitist, basically. Accused him of not liking carnival workers. Accused him of not liking people from Tennessee, where Mr. Box is from. Accused him of not liking people who lived in trailers. Then he started making fun of him for how he talked. He's eloquent. He uses 16-cylinder words. I don't understand half of them. If I did, I wouldn't use them. Men's ray, hearkening back, percipient knowledge, indicia of shearing. He said, I didn't know whether or not we were in a biology or a speech class. He's just making fun of defense counsel. Finally, he moved on to how Mr. Wyckoff acted. Yelling, screaming, pounding, theatrics. You know, these remarks, their attacks on defense counsel, this is a close case. What if they're accurate? I don't think it matters. It doesn't matter. So if a defense counsel yells, screams, and pounds the table, the prosecutor commits error by mentioning that? He should object if he thinks it's objectionable. Speaking about that, did the defense counsel object to any of these remarks? No, absolutely not. And he probably shouldn't have. He's already being labeled an elitist, you know, a snob. Now what is he going to do? He's going to object and be labeled a thin-skinned? So it's a reasonable decision to not object to that. And, you know, it's just like you don't have to object to a trial judge's error if it's going to irritate the thing. By objecting, he could have reasonably decided that it would have made the situation worse. It would have made him look even like a worse person, and it would have distracted the jury from the closeness of the evidence even more. So I don't think you can excuse the state's argument based upon defense counsel's entirely reasonable decision to not respond to it and to just let it go. And I would point out that he objected to it in his post-trial motion, said that this argument wasn't proper. The state didn't try and justify it. They just argued it was harmless and the trial court did nothing about it. So there was one chance anyway that wouldn't have prejudiced Mr. Stockey in front of the jury to cure this error. In summary. Not at the time it was allegedly being made. No, not at the time. You're talking to a panel of trial judges with about close to 40 years' experience. I understand that. We understand. You see, if there's an improper argument being made in our courtroom and the other side objects, there are all kinds of things the trial judge can do to stop it and to correct it and maybe even deprive the party making the allegedly improper argument of any benefits from doing so. But if you're the trial judge and you're sitting there and you hear nothing, now the question is, do I really intervene sua sponte? Exactly. Like the Supreme Court suggested in U.S. v. Young, when you have situations like that that are devolving into this kind of invited error situation, when you have a toxic situation in the courtroom, the trial judge, the Supreme Court says is supposed to step in and defuse the situation. So this was toxic? That's a pretty outrageous closing argument. I'm sorry. I just think it is. And I do think it's toxic. And I do, again, it's a close case. Defendants have enough problems without the prosecution. Mr. Parkinson was an experienced attorney when I started 32 years ago, and he knows what he's doing. It's not somebody who's new making a mistake. In any event, the relief I'm requesting here, and I didn't talk about it, was a new trial based upon the speedy trial argument. Barring that, Mr. Stokke is requesting a new trial on second-degree murder because of the other issues I raised, the evidentiary rulings, the causation, et cetera. If there are no more questions, I thank you for your time. Thank you. You'll have time on rebuttal. Ms. Brooks. Good afternoon, Your Honors. I'm Allison Paige Brooks, appearing on behalf of the people. May it please the Court and counsel. First of all, I'd like to begin with the speedy trial issue because of what the defendant is asking is for outright discharge. And despite the Iscrierto-Flores case in which, in very similar circumstances, was sent back on second-degree murder. Of course, that case involved a conviction and sentence for first-degree murder that would have been barred by, the Court found was barred by speedy trial rule. So, therefore, the proceedings had to go back. However, in this case, the defendant was acquitted of first-degree murder and convicted and sentenced to second-degree murder. So, under that case's result, essentially, there is no need for a remand. Instead, what the defendant says is that he was prejudiced and should receive discharge because of his theory that, had counsel raised a speedy trial objection before trial in this case, that there would have been no trial. And that is essentially the reason why the defendant believes that he's entitled to absolute complete discharge on appeal under grounds of either ineffective assistance of counsel or plain error. He's relying on this very old case of Nagel. Now, Nagel is actually distinguishable because, in that case, there was a charge in August 1905 on one count of murder. And then, by January 1906, he's set free. Now, essentially, that's the only charge that was ever pending at that time. So, every offense that he was in jeopardy of being convicted of, for murder at the time, would have been in violation of the speedy trial rule that existed back in 1905 and 1906. However, in this case, he was initially charged with second-degree murder. And that was nolly-crossed when it was substituted in for a first-degree murder charge. Now, second-degree murder is a theory that was subsumed. The offense was subsumed into the first-degree murder charge, which replaced the second-degree murder charge, which was the subject of a nolly prosecuting. So, essentially, even under the first-degree murder charge, the defendant was subject to being convicted of, and eventually was convicted of, second-degree murder. So, under that situation, the second-degree murder offense never was subject to a speedy trial dismissal. And when the defendant claims that the only thing the prosecutors could have done after a speedy trial dismissal would be to file a new charge, and thereby, in his view, violate this rule of Nagel, it's actually, he omits to mention that, faced with a speedy trial dismissal motion, the prosecutors could have simply requested the court for leave to vacate the nolly prosecuting the second-degree murder charge in anticipation that, if the defense persuaded the judge to dismiss the first-degree murder charge, it would still have pending a second-degree murder charge. So, under that situation, there is no basis. In fact, the defendant's theory is that Nagel would only prohibit a new filing, at the very narrowest reading of Nagel, only prohibit the new filing of another charge. For the state to prove first-degree murder or second-degree murder, is there any difference in the elements of the offense? There are no differences in the elements, except the existence of mitigating factors, which are not themselves elements of the crime. So, to answer your question, technically, no, there is no difference in elements. So, to what extent was this a new charge that was filed? Well, the first Iscrierto Flores case went the other way. The first what? Iscrierto Flores, the appellate court decision, which they, on a second appeal, decided to invoke an exception, I think it was the law of the case, ruled differently and said that this situation was subject to the Williams rule because they deemed second-degree murder to be a new and additional charge. So, even accepting that analysis in the second opinion of Iscrierto Flores, which still had to dissent, but even accepting that it is new and additional, the state's position is also that this is not a situation for applying the rationale of the Williams rule, and there's four reasons why. And this is also something that a defense attorney could have had doubt as to whether Williams would have applied in this situation. First of all, the defendant starts out with an express, unqualified waiver of the statutory speedy trial rights. And why? Because, reason number two, the defense wanted these continuances for forensic testing because of the importance, the significance, and seriousness of the case, the charges in the case. So, even if this had been a first-degree murder case, they would have wanted the exact same continuances. That much is assured from the record. Also, third, the first-degree murder was a response to a defense disclosure of an affirmative defense of self-defense. And so, this is not an ambush tactic. The record actually confirms this is exactly what happened. Very, very soon after they get this disclosure from the defense, they realize that the concession of the mitigating factor of provocation was inconsistent with the defendant's claim of a perfect self-defense. Therefore, it was no longer appropriate to continue to concede the existence of that mitigating factor, and thereby the substitution of charges was necessitated. So, there is no ambush here, unlike Williams and the other cases like Williams. And also, the defense confirms there is, quote, nothing at all changed, and nothing at all, quote, changed with their defense readiness. So, they confirm after the existence of the, once the arrival of the first-degree murder charge, they say nothing's changed. Everything, all the evidence is absolutely going to be the same. So, this is not a situation they would have been forced to say, well, do I waive the speedy trial rights to give the defendant a chance to prepare more? No, they've confirmed that they did not need an additional continuance in this situation. So, those are all reasons for applying the fifth exception to Williams and saying that this is a situation where the Williams rule does not apply. And so, this Court does not even have to reach the prejudice question because there wouldn't be any prejudice at all if Williams does not apply. That's all on that issue. I'd like to move on to causation very briefly. With respect to the causation issue, this was not a flat-out bar of causation issue, of causation, evidence, and argument. This was a situation where the trial court suspected that there might be some problems with evidence and there was an argument on causation in the trial forthcoming. So, therefore, before the trial started, it required the defense to make an offer of proof on any evidence of causation before trial. And then, once the trial was beginning, they realized the defense had offered no evidence in an offer of proof on the issue of causation, and thereby barred the defense from making any argument or evidence as to that issue. And then, of course, the defense concedes causation in their closing argument. Now they're complaining on appeal that somehow their hands were tied and the verdict was directed. Well, verdict not being directed because there's still an issue of self-defense here. But to say that argument is barred, well, argument is always properly barred when there's no evidence to support an argument. And here they decided not to introduce any evidence because they did not comply with the offer of proof requirement of the trial court. And so, therefore, without any evidence of the supervening cause, they had nothing to argue about supervening cause to the jury. To permit them to do so would have simply prejudiced the state's right to a fair trial by allowing the defense to interject an irrelevant issue on something that was not a viable defense under the facts of the case. The chain of causation was not at all broken. The Mars case makes that completely plain because a victim's death has to be completely unrelated to any active accused and solely attributable to a secondary agency not at all induced by a primary one. And this is notwithstanding the issue of whether Mr. Box was competent enough to refuse medical treatment. Even if he's incompetent, it doesn't really matter. That issue is irrelevant because only if there is evidence that his death was completely unrelated to the stabbing, and, of course, he died of septic shock and acute peritonitis because he was stabbed in the stomach. And so there is no break in the chain of causation. The issue on causation was completely overwhelming. There is no prejudice. With respect to his evidentiary issues that he spent most of his argument on, he's emphasizing the prosecutor made some sort of pretrial concession about the victim, Box, being the aggressor. Well, the page he cites in the record contains three references to the word aggressor, all preceded by the word initial. So the concession or the claim or admission of the prosecutor in the argument at the hearing of the motion to eliminate was that Mr. Box was the initial aggressor because it's evidence of the preliminary hearing. And they also cited the fact of whether there was going to be any dispute as to whether Mr. Box was the initial aggressor in the incident. Of course, it comes out at trial that maybe from the witness's testimony that the account of some of the witnesses was that Mr. Box was either retreating or the defendant had to approach Mr. Box in order to stab him, in which case the idea of who was the aggressor at the moment of the stabbing could have changed. But there's nothing in the prosecutor's remarks that said that somehow all aggressor-related issues were being conceded. It was that he was the initial aggressor. And that was because it was undisputed that Mr. Box had sucker-punched the defendant. And that was never an issue. And the Freight House Tavern witnesses, alleged witnesses, Mr. Moore and Fox were their names. What they saw was the sucker-punching and then Mr. Box doing nothing else other than I think he said smirking. So it doesn't really show why it would be reasonable for the defendant to believe that after being sucker-punched once by an inebriated Mr. Box, that he would be in fear of further batteries. And even if he was in fear of another battery from this intoxicated man, if the defendant's testimony were believed that Mr. Box was again approaching to strike him in the face again, even the sucker-punch, according to the defendant's own admissions, caused a redness and slight bruising in his face. This is not anywhere close to a situation where the defendant could have had a reasonable belief that stabbing Mr. Box in the abdomen with a blade that would penetrate about three inches, I think, into his stomach cavity was necessary to prevent an imminent death or great bodily harm. So there was a close dispute in the evidence if the court would weigh the credibility of the competing witnesses as to whether the defendant had to step back forward or was still standing his ground at the time of the stabbing. But it doesn't really matter because he wasn't entitled to stab Mr. Box because Mr. Box was not armed. Mr. Box was not threatening deadly force. And in that situation, the jury properly reached the result on overwhelming evidence that the defendant had no reasonable belief, had an actual but unreasonable, objectively unreasonable belief in the necessity to defend himself with deadly force. So for those reasons, the issues are not subject to plain error review. Like, for example, the closing argument issues that are forfeited are not subject to first-pronged plain error review based on the closeness of the evidence, according to the defendant's theory. So for those reasons, the State would request this Court to affirm the conviction. And I don't see any further questions. Thank you, Counsel. Thank you, Your Honors. Any rebuttal, Mr. Andrews? On the speedy trial, the Nagel case specifically holds that if a charge is dismissed due to a speedy trial violation, the defendant cannot subsequently be tried on any charge under which he was in peril of being convicted in the dismissed charge. That completely covers this case. Let me ask you about that. This is essentially a compulsory joinder argument, is it not? It's very similar to a compulsory joinder argument, although it's such an old case. Aren't the elements of first-degree murder and second-degree murder the same? Are the elements the same? I would echo there's the additional mitigating factor. That wasn't my question. Well, sure. The elements are the same. The mitigating factor is not an element of the offense, is it? Right. The elements are the same. So what the State needs to prove when charging first-degree murder is the same thing the State needs to prove in a second-degree murder case, is it not? Yes, unless they are charging second-degree also. Well, if they charge second-degree, the elements are still the same. Isn't it correct that the only thing the State has done by charging second-degree is conceding the existence of a mitigating factor? And that's exactly why Nagel applies. Because the elements are the same, Mr. Box is at peril of being convicted of second-degree murder based on this first-degree murder charge. That's exactly why Nagel applies. And Nagel says you can't. Well, that's only if it's a new charge, isn't it? No, it says. This is the same charge. These are the same elements, aren't they? No, it says he cannot file any charges if he was in peril for that. So the State, having dismissed their second-degree murder, could not. Here's what happens. Assuming this is a speedy trial violation, this goes away, this conviction, it's all gone. The State, because they dismissed the second-degree murder, would have to refile that. And that's what Nagel specifically prohibits. Because he was at peril of being convicted of that original second-degree murder based on this now-invalid first-degree murder charge. And Nagel says you cannot refile that charge because he was at peril of being convicted of it under this one. So Nagel specifically applies to this situation. Well, when the State filed first-degree murder, had the 120-day rule run? Yes, it had. Barring the tolling, which is the issue of the way it was issued. Well, was there at any point that there was no charge pending against the defendant? No. And he was always in custody. Okay. Well, if the charge is the same, then I'm not sure I understand the new charge and what you're arguing. I'm saying the elements are the same, but I'm not conceding that the second-degree murder charge is the same as the first-degree murder charge. Why not? Well, it's not. It's got the additional mitigating factors. The elements might be the same, but it's a different crime. Well, compulsory rejoinder deals with charging new crimes. And second-degree murder is sui generis. There's nothing else like it. Where you're dealing with a mitigating factor which reduces the crime being committed. Let me quote Nagel. For another offense carved out of the transaction constituting a crime for which he was first committed, it talks about another offense. Second-degree murder is a different offense from first-degree murder. That's my point. And that's what Nagel talks about, a different offense. Well, Nagel and all the other cases dealing with compulsory rejoinder deal with other offenses, namely other charges with other elements. Do they not? I'm not conceding that Nagel is not. Well, they all do, don't they? I mean, that's, in fact, the case. They all deal with different offenses having different elements. Well, it's carried over as found that it was a new and additional offense. And that's my position, that that decision is correct. Because the burden of proof has changed on the mitigating factor. And I know this Court has rejected it in LaRue, but and because the sentences increased. So that's my position on whether it's the same offense. As far as the continuances, the defense wanting the same continuances, that's foreclosed by Williams, the Williams rule, as long as this Court finds that they're new and additional offenses. Causation, the argument was that there's no evidence to support it. As I pointed out, the evidence came from Dr. Day himself and the coroner. You know that I couldn't treat him. It's not normally a wound that somebody would die from. So there was evidence supporting the argument that the causation chain had been broken. And I see that my time is up. I'd like to thank the Court for time and again ask for either a complete reversal or a new trial. Thank you. Thank you, counsel. We'll take this matter under advisement. We are recessed.